UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL O'LEARY,

        Plaintiff,

v.

CHARTER TOWNSHIP OF FLINT,
DOUGLAS CARLTON, AND
TRACY TUCKER

        Defendants.

_____/

Case No. 09-13075

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [21]**

Plaintiff Michael O'Leary filed this action alleging that Defendants Charter Township of Flint (Flint Township), Douglas Carlton (Carlton) and Tracey Tucker (Tucker) violated his constitutional rights as secured by the First and Fourteenth Amendments and is seeking damages under 42 U.S.C. § 1981 and 42 U.S.C. § 1983. This matter comes before the Court on Defendants' motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, and for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c). For the reasons set forth below, Defendants' motion is GRANTED.

**I.    Facts**

    **A.  Beach House Incident**

Plaintiff, a caucasian male, is employed by Flint Township as a building inspector and has been for the past 23 years. (Pl.'s Resp. at 6; State Court Am. Compl. ¶ 1; Am. Compl.

¶ 3-4, 8.)[1] Carlton was the Flint Township Supervisor as well as Plaintiff's direct supervisor.[2] (State Court Am. Compl. ¶ 4; Am. Compl. ¶ 6.) Carlton was succeeded in his capacity as Township Supervisor by Karyn Miller "who beat ... Carlton in an election." (Pl.'s Resp. at 15.) Tucker is a department head within the Township and is currently Plaintiff's direct supervisor. (Am. Compl. ¶ 7.)

In March 2007, Plaintiff conducted a building inspection of a local restaurant and bar called the Beach House in connection with the transfer of a liquor license. Plaintiff along with the Township's assistant fire chief, Mark Rowley, performed the inspection and found "no significant violations warranting shutting down the ... business."[3] (Pl.s' Resp. at 6; *see*

_____

[1] The Court refers to the complaint filed in this action as "Am. Compl." and the complaint filed in the state-court action as "State Court Am. Compl."

[2] According to Defendant, prior to Tucker's employment, the department head position was vacant and Carlton acted as Plaintiff's interim direct supervisor. (Defs.' Reply at 6.)

[3] Defendants, on the other hand, contend that

Plaintiff ... found and recorded serious building code violations at this building. These violations caused the fire inspector to characterize the building as an 'imminent hazard.' In May 2007, after learning that Plaintiff allowed the business to operate without correcting these violations ... Carlton ... recommended that Plaintiff take steps to padlock the building until all of the violations Plaintiff documented were repaired.

Plaintiff never disputed Carlton's instructions. During a meeting with Carlton, Plaintiff and ... Rowley, agreed that the building should be padlocked. The Township's fire chief, John Ringwelski, who also inspected the building agreed that the building should be padlocked. Following a May 16, 2007 meeting with Carlton, Plaintiff and Rowley traveled to the Beach House to padlock the Building. A Township trustee, Brady Smith, contacted Plaintiff and Rowley before they arrived ... and told them to give the owners 24 additional hours to make repairs. Plaintiff did not padlock the building that day. Several months later, [in September 2007,] the Genesee County Health Department (GCHD) directed Plaintiff to padlock the building after it discovered that it was operating without electricity or hot water. Plaintiff padlocked the building after the GCHD issued a formal request.

*also* State Court Am. Compl. ¶ 7; Am. Compl. ¶ 11.) Carlton, however, was allegedly dissatisfied with the results of the inspection and "made it clear" that he wanted Plaintiff to shut down the Beach House—an African-American owned and operated establishment "which catered to black clientele" in Flint Township, a predominantly white neighborhood. (State Court Am. Compl. ¶ 5; Am. Compl. ¶ 9.) According to Plaintiff, Carlton ordered him to:

> "Shut them down, go into that business and find some reason to shut them down. We don't want 'gang bangers' and 'north end problems' coming into our Township."

(State Court Am. Compl. at ¶ 6; Am. Compl. ¶ 10.)

Plaintiff interpreted the references to "gang bangers" and "north end problems" as referring to African-Americans. (State Court Am. Compl. ¶ 6; Am. Compl. ¶ 10.) Plaintiff believed Carlton was motivated by racism and was looking for a regulatory pretense under which to act. Plaintiff, however, defied Carlton's order and refused to shut down the Beach House. (State Court Am. Compl. ¶¶ 7, 9; Am. Compl. ¶¶ 11, 13.)

> Here, the Defendant Township wanted him to apply a different, and blatantly racist, merciless standard to this African-American owned business. Michael O'Leary, however, is that rare white person who will do the right thing and fight for the rights of African-Americans, even if it costs him his job and livelihood. He stood up to Defendants' racist attempt to destroy an African-American business. He refused to be merciless and to treat the African-American business differently than the white-owned businesses in Defendant Flint Township.

_____

(Defs. Mot. at 6-7.)

Plaintiff, however, argues that "Defendants' Statement of Facts regarding 'imminent hazards' and thirty violations is pure fiction. What Defendants omit to tell this Court is that this was not the condition of the [the Beach House] ... at the time Mr. O'Leary was ordered to shut it down simply because it was an African-American business." (Pl.'s Resp. at 6 fn.1.)

(Pl.s' Resp. at 6-7.) In response to Plaintiff's refusal to shut down the Beach House, Carlton told Plaintiff, "You did a real poor job on that assignment." (State Court Am. Compl. ¶ 8.)

Following the Beach House incident, Plaintiff claims that "his life became a living hell at work." (Pl.'s Resp. at 7.)

### B. State-Court Action

On August 25, 2008, Plaintiff filed a lawsuit against Flint Township and Carlton in Genesee County Circuit Court.[4] (Pl.'s Resp. at 8.) In the state-court complaint, Plaintiff claimed that Flint Township and Carlton discriminated against him in violation of Michigan's Elliot-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2201, *et seq.* (Pl.'s Resp. at 8.) The two-count state-court complaint claimed that both Carlton and Flint Township

> retaliated against, discriminated against, and/or engaged in retaliatory harassment [against him] for having stood up to/opposed race discrimination against a black-owned business catering to black clientele regarding their enjoyment of public services and public accommodations such as white people seem to enjoy without any problem whatsoever.

(State Court Am. Compl. ¶ 9.) Plaintiff specifically alleged that Carlton and Flint Township discriminated against him in "issuing phony/trumped up discipline against [Plaintiff], suspending him from his job and/or finally 'constructively discharging [Plaintiff]' from his job." (State Court Am. Compl. ¶ 14.) In other words, Plaintiff claims that—because he failed to comply with Carlton's orders to shut down the Beach House restaurant—Flint Township and Carlton were engaged in a studied purpose to drive him out of his job and categorically retaliate and discriminate against him for standing up for the rights of the African-American business owners and patrons. (Pl.'s Resp. at 7.)

---

[4] Tucker—a named Defendant in this action—was not named as a defendant in the state-court action.

4

The state-court complaint was amended on March 17, 2009, (Pl.'s Resp., Ex. 8), discovery ended on August 21, 2009, (Pl.'s Resp. at 7), and the state-court defendants filed a motion for summary disposition which was argued on October 26, 2009, (Defs.' Mot., Ex. 5). On November 6, 2009, the Genesee County Circuit Court granted the state-court defendants summary disposition as to each claim filed in that action. (Defs.' Mot., Ex. 3.) On November 12, 2009, Plaintiff filed an appeal with the Michigan Court of Appeals, where his state-court case remains pending. (Defs.' Mot. at 7.)

**C. Federal-Court Action**

On August 4, 2009, with discovery underway in state-court, Plaintiff filed the instant lawsuit against the same defendants named in the state-court action and also against Tucker. Plaintiff's federal complaint alleges violations of 42 U.S.C. §§ 1981 and 1983, again asserting that Defendants discriminated and retaliated against him for his conduct regarding the Beach House incident. (Am. Compl. ¶¶ 1, 5-7.) The two-count federal-court complaint claims that Carlton, Tucker and Flint Township

> retaliated against, discriminated against, and harassed [Plaintiff] ... for having stood up to/opposed race discrimination against a black-owned business catering to black clientele regarding their enjoyment of public services and public accommodations such as white people seem to enjoy without any problem whatsoever in Flint Township.

(Am. Compl. ¶ 13.)

Plaintiff's state and federal complaints contain nearly identical allegations[5] against Defendants but for one specific allegation: (1) that Tucker, and the other named

---

[5] Specifically, paragraphs 1 through 9 of the state-court amended complaint are identical to paragraphs 3 through 13 of the federal court Amended Complaint, excepting paragraph 7 which adds Tucker to the suit. (State Court Am. Compl. ¶¶ 1-9; Am. Compl. ¶¶ 3-6, 8-13.)

Defendants, colluded in an effort to manufacture false disciplinary notices against him in retaliation for filing his state-court complaint.

> (14) That Plaintiff, Michael O'Leary, exercised his First Amendment right of free speech and to petition by, amongst other conduct, filing an ELCRA retaliation lawsuit in State Court against Defendants Flint Township and Carlton because he was punished for standing up for the rights of African-Americans and an African-American business in Flint Township.
>
> (15) That after Plaintiff filed and served upon Defendants said State Court ELCRA lawsuit, Defendants further conspired and retaliated against Plaintiff by actions including, but not limited to, secretly creating retroactive and bogus "disciplinary" write-ups (which were attempted to be used by Defendants' counsel during the State Court deposition of Plaintiff).
>
> (16) That Defendant Carlton acted in concert with the other Defendants in retaliating against Michael O'Leary, and did in fact punish and/or retaliatorily harass Michael O'Leary for his exercise of his constitutional and statutory rights.

(Am. Compl. ¶¶ 14-16.)

The Amended Complaint refers to three disciplinary notices dated November 2008, that purportedly contain false accounts of Plaintiff's unsatisfactory job performance allegedly demonstrating additional instances of retaliation against Plaintiff.[6] (Pl.'s Resp. at 7.) Plaintiff contends that these disciplinary notices, which were authored by Tucker in coordination with Flint Township and Carlton, were "secretly creat[ed] retroactive[ly]" in an attempt "to be used by Defendants' counsel during the State Court deposition of Plaintiff." (Am. Compl. ¶ 15.) Defendants, on the other hand, contend that the disciplinary action notices were written in response to Plaintiff's failure to comply with Flint Township standards and procedures when issuing demolition permits, certificates of occupancy and

---

[6] These three disciplines proposed 44 days of unpaid leave. (Defs.' Mot., Ex. 4.)

notices of violation. (Defs.' Mot., Ex. 4.) These disciplinary action notices, however, were never issued to Plaintiff.

Plaintiff first learned of the disciplinary action notices on April 8, 2009,[7] just three weeks after filing his first amended complaint the state-court action, more then four months before the discovery cut-off date and seven months before summary disposition was granted in that state-court action. (Defs.' Mot. at 15.)

> During discovery in the State Court case, an amazing thing happened. While Defense Counsel was questioning Plaintiff at a deposition, Defense Counsel marked as exhibits several written disciplines to question Plaintiff about and use against him in defending the case. Defendants' counsel didn't realize, however, that these were secret write-ups that were devised after Plaintiff's ELCRA lawsuit was filed. In other words, Defendants had concocted a secret paper trail that was never shown to Plaintiff before his deposition that Defendants were going to use as a basis to fire Plaintiff simply because he exercised his constitutional rights by filing his ELCRA lawsuit in State Court.

(Pl.'s Resp. at 7.) In July 2009, Plaintiff also deposed Tucker about these disciplinary notices in connection with discovery in the state-court action. (Pl.'s Answer at 7.)

This matter is currently before the Court on Defendants' motion for summary judgment.

## II.    Rule 56 Motion for Summary Judgment Standard

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as

---

[7] Plaintiff was served these secret documents, labeled FTWP0747 through FTWP0750, on April 8, 2010 when defendants' counsel, in the state court action, deposed him. (Pl.'s Resp. at 7; Defs.' Mot. at 15.)

a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

## III. Analysis

Defendants argue that, in light of the allegations in Plaintiff's state-court and federal complaints and his reliance on identical evidence in both lawsuits, Plaintiff should have sought leave to amend his state-court complaint. Defendants contend that, in this action, Plaintiff is merely trying to relitigate the same claims that have already been adjudicated on the merits in the state-court action. Defendants, therefore, conclude that because Plaintiff failed to amend his state-court complaint his claims in this action are barred by the doctrine of res judicata. Plaintiff, on the other hand, argues that his claims are not barred

by res judicata because: (1) the federal action relates to a separate transaction or occurrence than does the state-court action; and (2) each action has different named defendants.

## A. Claim Preclusion

"The Full Faith and Credit Clause, U.S. Const., Art. IV, § 1, as implemented by the federal full faith and credit statute, 28 U.S.C. § 1738, requires federal courts to give preclusive effect to state court judgments." *Katt v. Dykhouse*, 983 F.2d 690, 693 (6th Cir. 1992); *see generally* Moore's Federal Practice 3d § 133.30. "[W]hen asked to give preclusive effect to a prior state court judgment, a federal court must look to the law of the rendering state to determine whether and to what extent that prior judgment should receive preclusive effect in a federal action." *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997). Accordingly, in this case, Michigan law governs the preclusive effect of Plaintiff's prior state-court action.

Under Michigan law, courts give preclusive effect to prior judgments when:

(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first.

*Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004); *see also Dart v. Dart*, 597 N.W.2d 82, 88 (Mich. 1999). The Court finds that these elements are met here, and discusses each in turn.

### 1. Prior Action Decided on the Merits

It is well established than an action is decided "on the merits" when summary disposition is granted. *See Sherrell v. Bugaski*, 425 N.W.2d 707, 709 (Mich. Ct. App. 1988). Here, the Michigan Circuit Court granting summary disposition to Flint Township and

Carlton and that decision was, therefore, a decision "on the merits." Although Plaintiff has apparently appealed this final order, the fact that an appeal is pending does not alter the preclusive effect of the order. *See Crawford*, 202 F.R.D. at 226 ("However, the rule in Michigan is that a judgment pending on appeal is deemed res judicata.") (internal quotations and citation omitted). Accordingly, the first element of res judicata is satisfied.

### 2. Both Actions Involve the Same Parties or Their Privies

The second element requires that both actions be between the same parties or their privies. Both Carlton and Flint Township were named defendants in the state-court action. "Thus, the party against whom claim preclusion is being asserted was present in both suits." *Dubec*, 312 F.3d at 751. The second element of res judicata, as to these parties is, therefore, satisfied. *See Crawford*, 202 F.R.D. at 227 ("Plaintiff's claims under both § 1983 and § 1981 against the same defendant officials named in the state court action are barred by res judicata. Although plaintiff argues that this action is not barred because he has added the § 1981 claim against those same defendants, the § 1981 claim is barred because it clearly could have been brought in the state case and it arose out of the same transaction or occurrence."). Tucker, on the other hand, was not a named defendant in the state-court action.

Plaintiff argues that because Tucker was not a party to the state-court action, nor the direct successor to Carlton as Flint Township Supervisor, the parties are not in privity. Plaintiff, however, defines privity too narrowly.

> A government official sued in his or her official capacity is considered to be in privity with the government. Therefore, a judgment for or against an official will preclude a subsequent action on the same claim by or against another official or agency of the same government. Similarly, a prior judgment

10

involving the government will bar an action against individual officials of the
government in their official capacity for the same claim.

*Crawford*, 202 F.R.D. at 227 (quoting Moore's Federal Practice 3d, § 131.403(e)(ii)).

Tucker, therefore, does not need to be the direct successor to Carlton in order to be in

privity to the prior suit as Plaintiff argues: Tucker need only be an official in the employment

of Flint Township and named as a result of that capacity. *See Dubuc v. Green Oak Twp.*,

312 F.3d 736, 751 (6th Cir. 2002); *Crawford*, 202 F.R.D. at 227 ("[T]he claims are barred

because both Pollock and Burke are parties 'in privity' with the defendant officials involved

in the prior state action and with the state agencies named as defendants in the prior state

case."). It follows that Tucker, as an official employed by Flint Township—whose duties

included managing Plaintiff in a capacity similar to Carlton—was named as a result of that

capacity and is, therefore, in privity to the defendants in the state-court action.

Plaintiff, however, argues that strict claim preclusion does not apply to Tucker with

respect to the claims asserted against her in an individual capacity. *See Fleming v. City of
Detroit*, No. 04-74081, 2006 WL 2559862, at *6 (E.D. Mich. Sept. 1, 2006) ("While privity

generally exists between a city official sued in his official capacity and the city, the opposite

is generally true as to a city official sued in his personal capacity.").

> A government official sued in his personal capacity, however, presents a
> different case. If the plaintiff prevails against the official, the official must
> satisfy the judgment out of his own pocket, rather than have the government
> entity pay the damages . . . [C]ourts do not generally consider an official sued
> in his personal capacity as being in privity with the government.

> However, this distinction between official capacity and personal capacity
> claims is not ironclad. Where there is a sufficient identity of interest between
> a government official and the governmental entity or where the inclusion of
> the personal capacity claim amounts to nothing more than a pleading artifice,
> privity may be found to exist regardless of the fact that the official has been
> sued in his personal capacity.

*Fleming*, 2006 WL 2559862, at *6.

Although Plaintiff brought this suit against Tucker in her individual capacity, and not in her official capacity, Defendants contend that this is simply an unfounded attempt to defeat claim preclusion.

> The [c]ourt should not allow [a]ppellant to continue this repetitive litigation simply by finding some municipal official that has not yet been sued, and trying to blame what he claims was systemic group mistreatment of him on that one person individually.

*Dubuc*, 312 F.3d at 752. Michigan law holds that defendants, even in their individual capacity, are in privity to prior lawsuits involving their governmental employer, and—Defendants contend—this claim is accordingly barred by the state's broad claim preclusion doctrine. *See Adair*, 680 N.W.2d at 397 (holding that, under Michigan law, "a perfect identity of the parties is not required;" rather, the Michigan courts require "a substantial identity of interests and a working functional relationship in which the interests of the nonparty are presented and protected by the party in the litigation"); *see also Fleming*, 2006 WL 2559862, at *6-*7 (quoting *Williams v. City of Allentown*, 25 F.Supp.2d 599, 604 (E.D. Pa. 1998); *Motuelle v. Ruffini*, No. 244557, 2004 WL 1254304, at *1 (Mich. Ct. App. June 8, 2004).

In *Motuelle*, the plaintiff was unsuccessful in his attempt to overturn an administrative appeal that found him ineligible for law enforcement certification in Michigan Circuit Court. *Motuelle*, 2004 WL 1254304, at *1. The circuit court affirmed the administrative hearing officer's opinion on the merits. *Id.* at *2. The plaintiff subsequently filed another complaint in another Michigan Circuit Court naming additional defendants who were not named in the prior action. That circuit court granted the defendants' motion for summary disposition,

concluding, *inter alia*, that the plaintiff's claims were barred by res judicata and collateral estoppel, notwithstanding the addition of other defendants. *Id.* On appeal, the Michigan Court of Appeals rejected the plaintiff's argument that the defendants in the second action were not privies to the defendants in the first action. The appellate court "explained the related privity requirement in the context of the doctrine of res judicata." *Id.* at *4.

> The parties to the second action need be only substantially identical to the parties in the first action, in that the rule applies to both parties and their privies. As to private parties, a privy includes a person so identified in interest with another that he represents the same legal right, such as a principal to an agent, a master to a servant, or an indemnitor to an indemnitee. In order to find privity to exist between a party and non-party, Michigan courts require both a substantial identity of interests and a working or functional relationship in which the interests of the non-party are presented and protected by the party in the litigation.

> Here, the COLES and defendants had an employer-employee relationship. Plaintiff's suit against defendants involves defendants' conduct while in performance of their duties as COLES employees. Defendants' interests as employees were presented and protected in plaintiff's suit against the COLES, which involved the same set of facts. Therefore, the trial court properly considered defendant to be in privity with the COLES.

> Next, plaintiff contends that the claims he brought in the previous action were against the defendants in their official capacities, so they differ from the claims brought in the present case, which are against defendants in their individual capacities . . . Michigan law defines res judicata broadly to bar litigation in the second action not only of those claims actually litigated in the first action, but claims arising out of the same transaction which the parties, exercising reasonable diligence, could have litigated but did not. If the same facts or evidence would sustain both the previous action and the subsequent action, they are the same for purposes of res judicata . . . [P]laintiff advanced separate theories in separate suits before two different courts for one common set of facts. This is precisely the situation that the doctrine of res judicata seeks to discourage.

*Motuelle*, 2004 WL 1254304, at *3-*4(internal quotations, citations and footnotes omitted).

The existence of privity among defendants in subsequent actions, within the context of an employer-employee relationship, has also been applied by the Sixth Circuit.

> Under Michigan law, however, "a perfect identity of the parties is not required"; rather, the Michigan courts require "a substantial identity of interests and a working functional relationship in which the interests of the nonparty are presented and protected by the party in the litigation." *Adair v. Michigan*, 680 N.W.2d 386, 396, 397 (Mich. 2004) (internal quotation marks omitted). This test is met when the previous governmental-unit Defendant (here, the MDOC) and the present-case Defendants (here, the individually named Defendants) have an employer-employee relationship, regardless of whether the claims in the first suit were brought against the Defendants in the same capacity as the claims in the second. *See Motuelle v. Ruffini*, No. 244557, 2004 WL 1254304, at *4 (Mich. Ct. App. June 8, 2004) (unpublished opinion).

*McCoy v. Michigan*, No. 08-1641, 2010 WL 841198, at *3 (6th Cir. 2010).

Here, Tucker is an employee of Flint Township and, like Carlton, managed Plaintiff. The Court finds that, as between Tucker and the other Defendants, there is a sufficient identity of interests and a sufficient working or functional relationship such that Tucker is in privity with them. "Any other holding would reward litigants who failed, intentionally or not, to include all relevant parties in an action and would permit two (or possibly many more) attempts to try the same cause of action." *Fleming*, 2006 WL 2559862, at *6 (internal quotations and citation omitted). Accordingly, Plaintiff's attempt to defeat claim preclusion by naming Tucker is rejected and the privity requirement is satisfied.

### 3. Matter in Second Case was, or could have been, Resolved in the First

To defeat this element, Plaintiff argues there are two separate and distinct transactions. He argues the first transaction, as alleged in his state-court complaint, was the initial discrimination and retaliation that he suffered because he opposed Carlton's order to "shut down" the Beach House. The second transaction, that Plaintiff claims is separate and distinct from the first thereby forming the basis for this action, is the retaliation that

Defendants subjected him to for having filed the state-court action, including the November 2008 disciplines.

Plaintiff alleges that any events which happened after the state court suit was filed are a separate transaction or occurrence (Pl.'s Resp. at 8-10.). Because he alleges the Township, Carlton and Tucker retaliated specifically for having filed the state court action, Plaintiff believes he should not be precluded from raising the federal claims in a separate action. "Specifically, Plaintiff was very careful to limit his Federal Court lawsuit to the separate and distinct transaction/occurrence #2, namely, that he was retaliated against in violation of his First Amendment rights for raising "matters of public concern" by filing the underlying, first lawsuit for opposing race discrimination." (Pl.'s Resp. at 9.).

Defendants, on the other hand, contend that

> these claims are based on the identical set of facts alleged in the state case, which were adjudicated on the merits when the state court granted Defendants' dispositive motion. Not only are the alleged circumstances and alleged retaliation identical, Plaintiff knew of the claims alleged here while the state action was pending and well before Defendants even filed their dispositive motion.

(Defs.' Mot. at 15.) And, this Court agrees: although Plaintiff correctly contends that the alleged retaliation, if true, would be in violation of his constitutional rights, he incorrectly states that this comprises a separate or distinct transaction under Michigan's broad claim preclusion doctrine.

"[R]es judicata is employed to prevent multiple suits litigating the same cause of action." *Adair*, 680 N.W.2d at 396. Michigan courts broadly apply res judicata to claims previously litigated and those arising out of the same transaction that could have been raised with the exercise of reasonable diligence, but were not. *Dart*, 597 N.W.2d at 86. "The

test for determining whether two claims arise out of the same transaction and are identical for res judicata purposes is whether the same facts or evidence are essential to the maintenance of the two actions." *Crawford v. Chabot*, 202 F.R.D. 223, 226 (W.D. Mich. 1998) (internal quotations and citation omitted). And "[a]ll facts, allegations, and legal theories which support a particular claim, as well as all possible remedies and defenses, must be presented in one action or are lost." Moore's Federal Practice 3d § 131.01. *See Adair*, 680 N.W.2d at 398 ("[T]he determinative question is whether the claims in the instant case arose as part of the same transaction as did the claims in [the previous litigation].").

> Under Michigan's "transactional test," whether a particular group of facts amounts to a singular transaction for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in time, space, origin or motivation. Courts employing the transactional test have generally acknowledged that a new action will be permitted only where it raises new and independent claims, not part of the previous transaction based on the new facts.

*McCoy*, 2010 WL 841198, at *4.

Defendants have met their burden and established the remaining element of res judicata—i.e., that the instant claims were or could have been resolved in the state-court action because they amounted to the same transaction. Here, Plaintiff's § 1983 and § 1981 claims could have been presented in the state-court action, even though Plaintiff did not raise such claims. *See Darrow v. City of Potterville*, No. 08-445, 2008 WL 5382341, at *1 (W.D. Mich. Dec. 22, 2008).[8] The origin of the two actions is the same: both concern the

---

[8] In *Darrow*, the plaintiff raised sexual harassment claims in state court, but the court entered a judgement of no cause of action following trial. *Darrow*, 2008 WL 5382341, at *3. The plaintiff later filed a federal claim based on the same facts as the state claim but alleging different causes of action, which included a § 1983 claim. *Id.* at *4. The federal court noted that state courts have concurrent § 1983 jurisdiction with federal courts. *Id.* at *6. Following Michigan's claim preclusion doctrine, the court held that because the § 1983

16

alleged violations of Plaintiff's rights stemming from the same Beach House incident and the subsequent discrimination and retaliation that allegedly ensued. But for the Beach House incident, there would be no federal cause of action. Not only were the incidents linked, but both the federal and state complaints allege retaliatory disciplinary actions following the Beach House incident. (State Court Am. Compl. at ¶ 14 ("Defendants ... retaliate[d] against ... Plaintiff for having engaged in protected activity ... which ... included ... *issuing phony/trumped up discipline* against him.") (emphasis added).)

In fact, Plaintiff details how the federal and state claims are inextricably linked in the Amended Complaint where Plaintiff claims that the retaliation only occurred because the ELCRA retaliation action was filed, which itself was filed only because the Beach House incident occurred. (*See* Am. Compl. ¶ 14.) At the heart of both suits, Plaintiff alleges that his activities following the Beach House incident were protected activities.

> (12) That Michael O'Leary, Plaintiff, engaged in protected activity by opposing the instruction/order to "shut them down" just because they were a black-owned business catering to black clientele. This is clearly "engaging in protected activities."

> (14) That Defendants herein did retaliate against Michael O'Leary, Plaintiff, for having engaged in protected activity within the meaning of the aforesaid ELCRA law.

(State Court Am. Compl. ¶¶ 12, 14.)

> (21) That Michael O'Leary, Plaintiff, engaged in protected activity under the First Amendment when he raised matter of public concern, and, further, when

---

claim arose from the same basic facts and could have been raised and adjudicated in state court, the plaintiff could not raise the claim in federal court. *Id.*

State courts similarly have concurrent jurisdiction over § 1981 claims. Since Plaintiff's instant claims, to which state courts have concurrent jurisdiction are based on the same transaction as the state-court action, the claims are barred by res judicata.

he petitioned them for redress by filing documents, including but not necessarily limited to, his State Court ELCRA retaliation claim.

(22) That specifically, when and because Michael O'Leary engaged in protected activity, as aforesaid, Defendants retaliated against him.

(Am. Compl. ¶¶ 21-22.) Both complaints identify the same factual nexus involving the discrimination alleged by Plaintiff and adjudicated in the state-court action. Thus, it is impossible to separate the federal claims from the state claims as Plaintiff attempts to do.

Both complaints also rely on virtually identical facts, and, with the exception of Tucker, the same defendants have been named in both actions. Moreover, Plaintiff stipulated "that all of the discovery heretofore taken in the State case can and should be used as discovery in the Federal Court case, which means there will be no further discovery to be taken in this Federal Court case." (Pl.'s Resp. at 20.) *See Dubuc*, 312 F.2d at 750; *Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 817 (6th Cir. 2010).[9] Because the state-court complaint included specific allegations of retaliatory conduct in response to Plaintiff's engaging in what he believed was protected behavior—which is identical to the structure of the federal

_____

[9] In *Dubuc*, the court held that because the plaintiff could have—and did—raise the relevant federal claims in state court, he was unable to relitigate the federal claims in a separate federal action due to claim preclusion. *Dubuc*, 312 F.3d at 750. Even though the state-court action was dismissed because of the failure of the plaintiff to comply with court orders, this still satisfied the requirements that the relevant claims must have been resolved, and the decision based on the merits. *Id.*

The court in *Buck*, like *Dubuc*, held that the plaintiff's claims were precluded because many of the factual allegations in the federal suit were identical to those in the plaintiff's state-court action, and specifically included retaliation claims which arose after the state-court complaint had been filed. *Buck*, 597 F.3d at 817. Because Michigan imposes a duty upon plaintiffs to supplement their complaints with allegations developing during the pendency of the action, the plaintiff was barred by claim preclusion from raising the supplemental claims in a later federal action. *Id.*

allegations—Plaintiff's federal retaliation claims comprise the same transaction as his ELCRA retaliation claims, and should have been raised in the state-court action.

It is also well settled in Michigan that a plaintiff alleging claims of retaliatory conduct for filing a lawsuit must amend his initial complaint if final judgment has not already been rendered on that initial claim. *Dubuc*, 312 F.3d at 750; *Buck*, 597 F.3d at 817.

> When the alleged additional manifestation of retaliatory animus occurs before adjudication on the merits of the initial suit, however, the victim is obliged to amend his or her initial complaint to add these new allegations.

*Dubuc*, 312 F.3d at 750. Here, Plaintiff could have amended, or at least attempted to amend, his complaint in the state-court action and did not even though the state-court complaint specifically alleged that "Defendants ... retaliate[d] against ... Plaintiff for having engaged in protected activity ... which ... included ... *issuing phony/trumped up discipline* against him." (State Court Am. Compl. ¶ 14 (emphasis added).)

Plaintiff had sufficient time during which he could have amended his state-court complaint to include the instant claims, and the record is devoid of any allegations that the state court refused to hear these claims. Plaintiff first learned of these disciplinary notices on April 8, 2009, just three weeks after filing his first amended complaint the state-court action, more then four months before the discovery cut-off date and seven months before summary disposition was granted in that action. Plaintiff also deposed Tucker about these documents and plan of retaliation during discovery in the state-court action. In fact, Tucker's July 2009 deposition testimony, taken in relation to the state-court action, was related primarily to the issue of the November 2008 disciplines. (*See* Defs.' Reply, Ex. 1.) Although Plaintiff failed to amend his state-court complaint, he did, however, affirmatively rely on these November 2008 discipline notices throughout the state-court action. (Defs.'

19

Mot. at 8-9.) For example, during the hearing on Defendants' dispositive motion, Plaintiff's

counsel asserted that the November 2008 notices were evidence of retaliation:

> There's the three disciplines. Okay. Two are totally bogus and there's no fact
> basis for them and the other one is a violation of the standard operating
> procedure ...
>
> He creates a position for his underlin[g] Tracy Tucker ... He creates a position
> of economic enhancement guru supervisor ... She somehow ends up writing
> three disciplines against [Plaintiff] that would have given him 44 days off.

(Defs.' Mot., Ex. 5, Hr'g Tr. Oct. 26, 2009 at 63-65.) Plaintiff also relied on the November

2008 disciplinary notices as evidence of retaliation in his appeal brief to the Michigan Court

of Appeals.

> On 11/27/0[8], Defendant Carlton, through his political ally, Tracey Tucker
> (whom Defendant Carlton created a job for), concocted three secret
> disciplines against Plaintiff ... with 44 days of suspension.

(Defs.' Mot., Ex. 6, Pl.'s Appeal Br. at 13.)

Moreover, the state court was already familiar with the facts and evidence which

formed the basis of these claims, and it would not have been a significant imposition on

Plaintiff, Defendants or the court the have had these additional allegations included in a

second amended complaint in the state-court action. This is simply not a case where

Defendants discriminated or retaliated against Plaintiff after the state-court action had

issued a final decision nor it is a case where Plaintiff became aware of additional

unconstitutional conduct, occurring before the state-court action had ended, after the case

had closed. The Court accordingly finds that the final element, requiring that the matter in

the second case was resolved, or could have been resolved, in the first case, is also

satisfied here.

All elements of claim preclusion, as defined by Michigan law, are satisfied, and Plaintiff's claims are accordingly dismissed.[10]

## IV.  Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is hereby GRANTED.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: July 21, 2010


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 21, 2010, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager

---

[10] As the Court is dismissing Plaintiff's claims on other grounds, it need not address Defendants argument that the Younger and Colorado River abstention doctrines also merit dismissal.